Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, September 28, 2006 12:35:00 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| SHANNON LYNETTE EDDY, | ) | Case. No. 1:05-bk-02523 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SHANNON LYNETTE EDDY, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 1:05-ap-00210 |
| | ) | |
| v. | ) | |
| | ) | |
| EDUCATIONAL CREDIT | ) | |
| MANAGEMENT CORPORATION, and | ) | |
| U.S. DEPARTMENT OF EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Shannon Lynette Eddy (the "Debtor") seeks to discharge government-guaranteed student loans owed to the U.S. Department of Education ("DOE"), under the William D. Ford Federal Direct Loan program, and to the Educational Credit Management Corporation ("ECMC"), on the grounds that repayment of the loans would constitute an undue hardship on her and her dependent child. The DOE and the ECMC object to the requested relief. For the reasons stated herein, the court finds that repayment of the debts does not constitute an undue hardship, and, thus, the loans are excepted from discharge pursuant to 11 U.S.C. § 523(a)(8).

1

## I.  BACKGROUND

The Debtor is a 34-year old single mother.  She has one dependent, a four-year old daughter. They reside with the Debtor's parents.  She has no major medical problems and is currently in good health.

During the years 1989 through 2004, the Debtor attended three separate educational institutions.  From 1989 to 2001, she attended Salem International University and earned a Bachelor of Arts in criminal justice and psychology.  Although she did not complete the programs, from 1995 to 1996 she studied business and office technology at Webster College and accounting and finance at Fairmont State University from 2002 to 2004.  Her education was financed with government-guaranteed student loans, which had a balance of $62,461.00 as of May 24, 2006.  In addition to deferring payments on her student loans, the Debtor has entered into several forebearance agreements. Although the Debtor has paid one student loan in full, she ceased making payments to the ECMC in 2000 and failed to make a single payment to the DOE.  Although the Debtor has experienced two periods of unemployment during the past five years, she is currently employed in accounts payable and billing with a pay rate of $15.00 per hour.  According to the Debtor, her average net monthly income has ranged from a low of $1,300.00 during one period of unemployment to her current high of $1,660.00.  Additionally, the Debtor has consistently received tax refunds of approximately $2,800.00 per year from 2001 through 2005.  The Debtor also receives child support in the amount of $327.00 per month.  In examining the Debtor's actual paystubs, combined with child support and tax refunds, her net monthly income averages $2,680.39.  The Debtor asserts average monthly expenses of

$1,627.00 in interrogatory responses, $3,514.33[1] in her expenditures worksheet[2], and $2,232.00[3] on Schedule J.

## II. DISCUSSION

Section 523(a)(8) of the Bankruptcy Code excepts from a bankruptcy discharge, debts that are owed on government-guaranteed education loans.  11 U.S.C. § 523(a)(8).  The seminal case in the Fourth Circuit interpreting § 523(a)(8) is *In re Frushour*, 433 F.3d 393 (4th Cir. 2005).  In *Frushour*, the Fourth Circuit sets forth significant guidance for judging an action for an undue hardship discharge brought pursuant to § 523(a)(8).  *Frushour* teaches that, because Congress has expressly excluded government-backed student loan debts from discharge, a debtor faces a difficult burden in obtaining a discharge for educational debt - one must show that failing to discharge it would create an undue hardship.  In creating such a burden, Congress sought to protect the financial integrity of the various government-sponsored student loan programs.  *Id*. at 400-01.

The undue hardship standard requires more than the usual hardship that accompanies bankruptcy.  Inability to pay one's debts, by itself, is insufficient.  *Frushour*, 433 F.2d at 399 ("Debtors receive valuable benefits from congressionally authorized loans, but Congress, in turn, requires loan recipients to repay them in all but the most dire circumstances.").  Repayment can't be avoided merely because it would require some major personal and financial sacrifices.  *Id.*

In cases seeking to discharge a student loan on the basis of undue hardship, courts must apply a three-prong test originally adopted by the Second Circuit in conducting an undue hardship analysis under § 523(a)(8).  *See Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2nd Cir. 1987).  A debtor carries the burden of proving all three prongs by a preponderance of the

---

[1] This calculation includes a loan repayment of $1,875.00 to the Debtor's mother and sister. The court also notes that the Debtor's expenses during the second two months of this time period are elevated, which is likely a result of the Debtor having received her tax refund during this period.

[2] The Debtor was required to keep a list of all of her expenditures during a three-month period of time, which was then filed with the court.

[3] This amount includes a monthly payment of $550.00 toward the student loans.

evidence in order to demonstrate that undue hardship exists.  *Frushour*, 433 F.2d at 400.  First, a debtor must demonstrate that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay her student loan obligation.  *Id*. Second, a debtor must show that some additional circumstances exist indicating that her state of affairs is likely to persist for a significant portion of the repayment period of the student loans.  *Id.*  Lastly, a debtor has the burden of proving that she has made good faith efforts to repay the loans.  *Id.*


**A.  Minimal Standard of Living**

The Debtor contends that she is not able to maintain a minimal standard of living if her student loans are not discharged because she will need to purchase a new vehicle[4] and intends to move out of her parents' home, which will result in increased living expenses.  As noted, the first prong of the *Brunner* test requires a debtor to demonstrate that she is not able to maintain a minimal standard of living for herself and her dependents if forced to repay her student loans.  Moreover, the undue hardship test necessarily requires a case-by-case approach in determining what expenses are unnecessary for maintaining a minimal standard of living.  *See Rifino v. United States*, 245 F.2d 1083, 1087 (9th Cir. 2001) (holding that a debtor had satisfied the first prong of the *Brunner* test even though she paid for cable television).

The Debtor asserts that her net monthly income from employment is $1,660.00.  The Debtor's actual paystubs show that her earnings average $2,153.35 net monthly. It is appropriate to consider income that is available to a debtor from sources outside of employment.  *See In re Greco*, 251 B.R. 670, 677 (Bankr. E.D. Pa. 2000) (stating that assistance to the debtor from any source must be weighed as a factor in determining the debtor's overall financial picture).  The Debtor receives regular child support payments of $327.00 per month and tax refunds of approximately $2,800.00 per year. The Debtor's average monthly net income, including child support and tax refunds, is $2,680.39.

The Debtor's reports of her expenses are inconsistent.  In her answers to Direct Loan's

---

[4] The Debtor currently drives a 1997 Ford Taurus with 160,000 miles.

4

interrogatories, the Debtor stated that her monthly expenses averaged $1,627.00, excluding any payment on her student loan obligations. This amount coincides with the amount on Schedule J, which shows monthly expenses of $2,232.00, including a monthly payment of $550.00 toward her student loans. According to these figures, the Debtor has approximately $1,000.00 per month in disposable income, which could be used to repay her student loan obligations. The Debtor, however, testified that these figures underestimate her expenses and that the expenditures worksheet, which shows a three-month average of $2,889.33 is accurate. During this three-month period, however, the Debtor received her 2005 tax refund. It follows, therefore, that her expenditures were elevated by this increase in income. For example, the Debtor tithes to her church. In the first month of her log, her church donation was $174.06. This amount increased to $569.07 in the third month of her log. Also, the Debtor's recreational expenses totaled $132.02 in the first month and increased to $417.40 for the second month and $467.17 for the third month. Likewise, the Debtor's food expenses in the first month were $413.59 and $709.74 in the third month. The court finds that the expenses of $2,150.81 listed in the first month of the Debtor's log, which are still significantly more than those listed on Schedule J and in the answers to the interrogatories, offer the most accurate picture of the Debtor's expenditures. This would still give the Debtor approximately $530.00 in disposable income each month. Because the court concludes that the Debtor has $530.00 per month in disposable income with which to repay her student loans, the Debtor has failed to meet the first prong of the *Brunner* test; consequently, the court will deny the Debtor a discharge of her student loans.[5]

**B. Certainty of Hopelessness**

The Debtor contends that her circumstances are likely to continue because she anticipates increased expenses in the future and does not foresee the possibility for increased earnings due to the job market. The second prong of the *Brunner* test requires a debtor to demonstrate additional circumstances exist that show that the current state of affairs is likely to persist for a significant portion

---

[5] Because the court finds that the Debtor has not satisfied the first prong, it is not necessary to address the second and third prongs; however, the court will do so in the interest of a complete analysis.

of the repayment period. *Brunner*, 831 F.2d at 396. According to *Frushour*, the second prong is at the heart of the *Brunner* test. *Frushour*, 433 F.3d at 401. It is a demanding requirement and necessitates a "certainty of hopelessness" that a debtor won't be able to repay her student loan obligations. *Brightful v. Pa. Higher Educ Assistance Agency*, 267 F.3d 324, 328 (3rd Cir. 2001). As the Fourth Circuit stated in *Frushour*, "[o]nly a debtor with rare circumstances will satisfy this factor. For example, although not exhaustive, a debtor might meet this test if she can show 'illness, disability, a lack of useable job skills, or the existence of a large number of dependents.' " *Frushour*, 433 F.3d at 401 (quoting *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005)).

This prong is prospective in nature and requires a debtor to show exceptional circumstances beyond her current situation. *Id*. The Debtor does not have any disability or medical condition that prevents her from working. The Debtor is well-educated and has earned a Bachelor of Arts degree, which serves to increase her employment potential. When put on the stand to testify the Debtor appeared intelligent, thorough, and well-spoken. In sum, the Debtor has not demonstrated the certainty of hopelessness required by *Frushour*.

## C. Good Faith

The Debtor contends that she has made a good faith effort by paying one small student loan to the State of West Virginia (not a party to this proceeding) and two payments on the loan owed to the ECMC. She admits that she has made no payments regarding her obligations to the DOE. The third prong of the *Brunner* test necessitates a showing by the debtor of good faith efforts to repay the obligations. *Brunner*, 831 F.2d at 396. Determining whether or not this prong is satisfied requires the court to examine a debtor's efforts to obtain employment, maximize income, and minimize expenses. *Frushour*, 433 F.3d at 402. According to the Debtor's own expense log, the Debtor has not sufficiently minimized expenses to satisfy this prong. The Debtor is paying the following on a monthly basis: $67.00 for health club dues, $55.00 for dance classes, $123.99 for cable, and $132.02 for recreational expenses. Reducing these expenses would produce additional income, from which payments on the student loan obligations can be made.

Furthermore, while not always dispositive, a debtor's efforts to explore an income contingent repayment plan or loan consolidation options indicate that a debtor is putting forth her best efforts to repay the loan obligations in light of her financial circumstances. *Tirch v. Pa. Higher Educ. Assistance Agency*, 409 F.3d 677, 682-83 (6th Cir. 2005). Counsel for ECMC sent a letter to the Debtor explaining the various payment options that she has, including information on the income contingent repayment plan, which is available to the Debtor as a way of reducing the repayment expenses. (Def.'s Ex. B.) *See* 34 C.F.R. 685.208. This plan would recalculate a debtor's payment amount each year based on her adjusted gross income, the variable interest rate, and the income percentage factors. After twenty-five years, any remaining debt would be discharged. *Cunningham v. Sallie Mae Servicing Corp.*, 2006 U.S. Dist. LEXIS 24427 *10 (N.D. W. Va. 2006). According to ECMC, the Debtor's payment under the income contingent repayment plan is estimated to be $272.67 per month, but the Debtor testified that she was only vaguely familiar with the income contingent option. The lack of the Debtor's consideration of the income contingent repayment plan is indicative of a lack of good faith.

The Debtor has not made any payments on the obligation to the DOE and has made only two payments on the loan currently held by ECMC. The Debtor's lack of any meaningful repayment effort is also indicative of a lack of good faith. *See Cunningham*, 2006 U.S. Dist. LEXIS at *12 (finding that a sole payment of $25.00 toward a graduate loan and failure to make any regular payments toward the loans were relevant to a finding of a lack of good faith); *In re Perkins*, 318 B.R. 300, 312 (Bankr. M.D.N.C. 2004) (holding that obtaining repeated forebearance while not even paying the accruing interest unnecessarily increases indebtedness). The Debtor offers her repayment of a separate educational loan, which was owed to a non-party, as evidence of her good faith. Repayment of another loan cannot be used to conceal the non-payment of the loans at issue in this case for purposes of the good faith analysis. *Cunningham*, 2006 U.S. Dist. LEXIS at *13. Therefore, the Debtor has failed to establish good faith efforts to repay the student loans that she seeks to discharge.

### III. CONCLUSION

For the above-stated reasons, the court finds that excepting the Debtor's government-

7

guaranteed student loans from discharge does not impose an undue hardship on the Debtor or her dependent.  Therefore, the Debtor's government-guaranteed education loans are excepted from discharge.

The Court will order a separate order pursuant to Fed. R. Bankr. P. 9021.